EASTERN LOCAL SCHOOL DISTRICT, Transfer of Funds, In re.

Common Pleas Court, Meigs County.

No. 13054.   Decided November 10, 1960.

For further history see *Omnibus Index* in bound volume.

BACON, J.   The petition reads * * * "The Board of Edu-

cation of Eastern Local School District, Meigs County, says that it has under its supervision funds in the sum of $5,143.76 in the Bond Retirement Fund which is not required for the purpose for which said fund was established.

By reason of the need of funds in the General Fund to pay for bleachers in the Eastern High School, which have been purchased, it is necessary to transfer $5,143.76 from said fund to the General Fund.

·A copy of the resolution declaring such necessity passed by said Board on the 4th day of July, 1960, is hereto attached and made a part of this petition.''

The above averments are not amplified by the resolution, and the board prays for authority to transfer $5,143.76 from the Bond Retirement Fund to the General Fund.

Briefly, the controlling facts are that Olive-Orange School District was embodied in its entirety within Eastern Local School District when the latter was created in May 1955. Among the assets to which Eastern succeeded was $6,508.76 in the bond retirement fund, from which the last two serial bonds totalling $1,300.00 with 5% interest were to be retired September 15, 1955. This was done, leaving the sum of $5,143.76, which remained in Eastern's Bond Retirement Fund.

This sum was commingled with other bond retirement revenues when Eastern sold serial bonds under a $425,000 issue voted in March 1956 and levies for debt charges augmented the bond retirement fund.

Eastern now has $35,396.51 in its bond retirement fund, which will be increased when the second half of the personal property tax settlement is received, from which serial bonds in the sum of $18,000 will be retired and $7,000 in interest will be paid on December 1st.

Considering the controlling statutes—Section 5705.09, Revised Code, fixing the funds which each subdivision shall establish; Section 5705.10, Revised Code, settling payment of the subdivision's revenues into such funds; Section 5705.14, Revised Code, enjoining transfers from one fund to another—the petition lacks the necessary allegations to authorize the court to order the transfer the board seeks.

Under the facts the petition's amendment to bring the case

under an exception that would permit the transfer is impossible.

The general assembly was extremely zealous to impose restrictions upon transfers from the bond retirement fund. Section 5705.10, Revised Code, concludes:

"Money paid into any fund shall be used only for the purposes for which such fund is established."

Section 5705.14, Revised Code, commences:

"No transfer shall be made from one fund of a subdivision to any other fund, *by order of the court or otherwise*, except . . ."

And the facts of the instant case preclude any of the exceptions enumerated.

Nor can the board proceed under Section 5705.16, Revised Code, which supplements the exceptions defined in Section 5705.14, Revised Code, because Section 5705.15, Revised Code, provides:

"In addition to the transfers authorized in Section 5705.14, Revised Code, the taxing authority of any political subdivision may, in the manner provided in this section and Section 5705.16, Revised Code, transfer from one fund to another any public funds under its supervision, *except the proceeds or balances of loans, bond issues, special levies for the payment of loans or bond issues* . . ."

Examining paragraph (C) of Section 5705.14, Revised Code, the exception the board urges, which reads as follows:

"The unexpended balance in the sinking fund or bond retirement fund of a subdivision, after all indebtedness, interest, and other obligations for the payment of which such fund exists have been paid and retired, shall be transferred, in the case of the sinking fund, to the bond retirement fund, and in the case of the bond retirement fund, to the sinking fund; provided that if such transfer is impossible by reason of the nonexistence of the fund to receive the transfer, such unexpended balance, with the approval of the court of common pleas of the county in which such subdivision is located, may be transferred to any other fund of the subdivision."

It is seen that the petition lacks the necessary allegations that there is an unexpended balance in the bond retirement fund, that all indebtedness, interest, and other obligations for the

payment of which such fund exists have been paid and retired, and that the subdivision has no sinking fund.

It was obviously the intent of the general assembly that when levies are made outside the 10 mill limitation to retire debt charges and circumstances are such that they can be so applied, such revenues must serve that end.

In the statute providing for the bond-issuing resolution a provision was made to be invoked when a surplus occurs in the bond retirement fund, that part of Section 133.33, Revised Code, which reads:

"The resolution . . . shall provide for the levying of a tax sufficient in amount to pay the interest on and retire at maturity all of the bonds covered by said resolution . . . but the amount of the tax to be levied in any year may be reduced by the amount to be available for such purposes from . . . any surplus in the fund from which such bonds are to be retired . . ."

The county budget commission was virtually emasculated when the general assembly yielded to the clamor which followed the excellent opinion of Chief Justice Weygandt in *State, ex rel. Board of Education of East Liverpool City School District* v. *Columbiana County Budget Commission*, 140 Ohio St., 65, 42 N. E. 2d, 652, 23 Ohio Opinions, 289. However, it is the opinion of this court that if the taxing subdivision does not heed Section 133.33, Revised Code, and persists in requesting an "outside" levy for debt charges that will create or maintain a surplus in the bond retirement fund, it is the duty of the county budget commission to adjust such millage.

Were the law otherwise the taxpayer would be powerless to prevent subdivisions from creating or maintaining surpluses with a view to syphoning it periodically or transferring a substantial sum when all debts are retired.

The records of this court disclose a classic example of public funds diverted from the purpose for which intended, when in 1950 the sum of $23,054.97 was transferred from Middleport Village's bond retirement fund to the general fund.

The taxpayer, who is fortunate or unfortunate in owning real estate, must pay the taxes assessed against his property, or the sheriff will sell it at the courthouse steps on execution under tax foreclosure. When a majority accedes to the urgings of taxing subdivisions and votes an outside levy for debt

charges, the taxing authorities of the subdivision and of the county should keep faith and outside millage should be confined to the purposes stated on the ballot.

Unquestionably school, farm and civic groups will find good use for the bleachers the board has purchased, but appropriate procedure has been provided by the general assembly for acquisitions of that nature. They cannot be paid for from taxes intended for debt retirement.